# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN RE:

EZROY C. SPENCER,

                      Debtor.                             Case No.  10-14413
                                                              Bankr. No.  09-74255

_____/

MAPLE FOREST CONDOMINIUM
ASSOCIATION a/k/a RED MAPLE
LANE ASSOCIATION,

                      Appellant,

v.

EZRA C. SPENCER and
DAVID WM. RUSKIN, STANDING
CHAPTER 13 TRUSTEE,

                      Appellees.

_____/

## OPINION AND ORDER REVERSING IN PART BANKRUPTCY COURT'S ORDER AND REMANDING FOR FURTHER PROCEEDINGS

This case comes before the court on the appeal of Appellant Maple Forest

Condominium Association ("Association" or "Maple Forest") to an order of the

bankruptcy court denying its motion for summary judgment in an adversary proceeding

and granting in part Appellee/Debtor Ezroy C. Spencer's motion for summary judgment.

Maple Forest challenges the bankruptcy court's determination that condominium

association fees assessed following the date on which Debtor filed for bankruptcy

comprise pre-petition claims subject to discharge under 11 U.S.C. § 1328(a).  Having

reviewed the briefs, the court determines that oral argument would not significantly aid

the decision, as all issues are adequately addressed in the briefs and record.  *See* Fed.
R. Bankr. P. 8012.  The court will reverse in part and affirm in part the bankruptcy
court's order and remand for further proceedings consistent with this opinion.

## I.  BACKGROUND

Prior to bankruptcy, Debtor owned a condominium unit on Red Maple Lane in
Wixom, Michigan.  Maple Forest Condominium Association issued regular assessments
for fees covering maintenance and repairs for common elements of the condominium
project including Debtor's unit.  On November 5, 2009, Debtor filed a petition for relief
under Chapter 13 of the United States Bankruptcy Code, by which point several months
of arrearage was owed to the Association.  Debtor also vacated the condominium
shortly before or after the petition date.  However, Debtor has retained title to the
property as of the date of this appeal.  This is not by choice, apparently, but rather as a
result of the upside down nature of his mortgages on the property.  Creditor
CitiMortgage holds a perfected first mortgage on the property at least equivalent to its
market value at the time of bankruptcy.  In addition thereto, the Association held a lien
for assessments, and Creditor Guarantee Bank held a second mortgage on the
property.  On February 2, 2010, the bankruptcy court lifted the automatic stay with
respect to CitiMortgage to permit it to pursue its remedies under state law through
foreclosure or otherwise.  Upon confirmation of Debtor's Chapter 13 plan, on April 24,
2010, the bankruptcy court lifted the automatic stay to permit foreclosure of the other
secured creditors' liens on the property.  The property revested in Debtor.  Although
Debtor indicated he was surrendering the property in satisfaction of the secured debt,
no secured creditor had moved to enforce its rights against Debtor as of the date of the

2

appeal.  The secured creditors may, therefore, foreclose upon the property, but none

has done so.  This, presumably, remains the state of affairs at this time.

Maple Forest filed several objections to Debtor's Chapter 13 plan, eventually

withdrawing them.  On February 5, 2010, the Association also filed a complaint in the

instant adversary proceeding against Debtor, seeking a declaratory judgment that post-

petition assessments are not discharged by the bankruptcy proceedings.  Cross-

motions for summary judgment were filed.  On October 6, 2010, the bankruptcy court

denied the Association's motion for summary judgment and granted in part and denied

in part Debtor's motion for summary judgment.  *In re Spencer*, 437 B.R. 563 (Bankr.

E.D. Mich. 2010).  In relevant part, the order held that "Maple Forest's claim for

condominium association dues is a pre-petition claim regardless of whether the

condominium association dues were assessed prior to the Debtor's Chapter 13 petition,

or became due and payable after the Debtor's Chapter 13 petition."  *Id.* at 578.  On

November 3, 2010, the Association appealed this ruling.  Debtor responded on

February 3, 2011.  The standing Chapter 13 trustee also filed a response on February

11, 2011.  The only issue before this court is whether assessments of condominium

fees for periods following the bankruptcy petition are discharged by a Chapter 13 plan

pursuant to 11 U.S.C. § 1328(a).  The court does not consider the other issues decided

by the bankruptcy court.

## II.  STANDARD OF REVIEW

In reviewing a bankruptcy appeal, a district court must accept as correct the

bankruptcy court's findings of fact, unless they are clearly erroneous.  Fed. R. Bankr. P.

8013; *see also In re Wingerter*, 594 F.3d 931, 935-36 (6th Cir. 2010).  Conclusions of

3

law, however, are reviewed *de novo. In re Wingerter*, 594 F.3d at 935-36. Issues of statutory interpretation are conclusions of law reviewed *de novo. United States v. Springer*, 609 F.3d 885, 889 (6th Cir. 2010); *In re Westfall*, 599 F.3d 498, 501 (6th Cir. 2010).

### III.  DISCUSSION

The sole issue presented on this appeal is whether Debtor's personal liability for condominium fees assessed after the filing of a petition for relief may be discharged in a Chapter 13 bankruptcy proceeding, pursuant to 11 U.S.C. § 1328(a). With certain exceptions not relevant here, § 1328(a) discharges pre-petition debts upon confirmation and completion of a bankruptcy plan. Debts arising after the petition date, however, are not generally dischargeable in bankruptcy. 11 U.S.C. §§ 101(5), (12), & 1328(a); *In re Hester*, 63 B.R. 607, 609 (Bankr. E.D. Tenn. 1986). Therefore, the appeal ultimately depends upon whether the post-petition assessments of condominium fees constitute dischargeable pre-petition debts or nondischargeable post-petition debts.

Under the Bankruptcy Code, "as soon as practicable after completion by the debtor of all payments under the [Chapter 13] plan . . . the court shall grant the debtor a discharge of all debts provided for by the plan." 11 U.S.C. § 1328(a). The plan provides for full or partial repayment of "debts"—a defined term under the Code. A "debt" means simply "liability on a claim." 11 U.S.C. § 101(12). A "claim" is in turn defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). Although a "right to payment" is not defined, the language has been read to require "the broadest available

4

definition of 'claim.'"  *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).  It does not

follow, however, that the definition of "claim" is unbounded.  To the contrary, there is no

claim without a "right to payment," however uncertain.  As a "'right to payment' [means]

nothing more nor less than an enforceable obligation," a claim must ultimately find some

foundation in an obligation that a creditor—at some point in time and under some

conditions—could enforce against the debtor.  *Johnson*, 501 U.S. at 83 (*quoting*

*Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 559 (1990))

(alteration in original).  Such right need not be immediately enforceable at the time of

filing for the right to constitute a claim.  11 U.S.C. § 101(5); *In re Parks*, 281 B.R. 899,

902 (Bankr. E.D. Mich. 2002).  A claim may be contingent or unmatured yet remain a

claim for purposes of bankruptcy law.  At the time of the bankruptcy petition, however, it

must be a right at least potentially enforceable by the creditor.

## A.  Approaches to Determining Timing of a Debt

Courts have taken three distinct approaches to determining whether a claim

arises pre-petition or post-petition.  As succinctly set forth in *In re Dixon*,

> The first, which is the most restrictive, is referred to as the "right to
> payment" test, under which a claim does not arise for bankruptcy
> purposes until each element of the claim is established.  This is the
> minority view and has been widely criticized as inconsistent with the broad
> definition of "claim" intended by Congress.  Under the second approach,
> termed "the debtor's conduct" approach, a claim arises when the conduct
> by the debtor occurs, even if the actual injury is not suffered until much
> later.  Finally, the third approach looks at whether there was a prepetition
> relationship between the debtor and the creditor such that a possible claim
> is within the fair contemplation of the creditor at the time the petition is
> filed.  This has been alternately termed the "fair contemplation,"
> "foreseeability," "pre-petition relationship," or "narrow conduct" test.

5

295 B.R. 226, 230 (Bankr. E.D. Mich. 2003) (citations and internal quotations omitted).

Although the Court of Appeals for the Sixth Circuit has yet to address the various tests,

the emerging consensus appears to adopt some version of the "fair contemplation"

approach. *In re Huffy Corp.*, 424 B.R. 295, 305 (Bankr. S.D. Ohio 2010).

In some situations, however, it is unnecessary to choose between the three

foregoing tests.  As applied to recurring condominium association fees, all three result in

further obfuscation of the underlying issue without indicating different results.  The

Association's right to payment of post-petition assessments as a personal debt of

Debtor depended upon Debtor's post-petition conduct in retaining ownership of the

property, establishing a post-petition claim under the first two tests.  Applying the third

test and placing particular emphasis on the pre-petition relationship of the parties, the

bankruptcy court determined that "a possible claim for the condominium association

dues that become due and payable in the future, even post-petition, was unquestionably

within the fair contemplation of Maple Forest when the Debtor filed his petition."  *In re

Spencer*, 437 B.R. at 572.  To the extent the "fair contemplation" test has meaning in

these circumstances, however, it is far from clear that the retention of title by Debtor

following a bankruptcy in which Debtor vacated the property and attempted to surrender

it, thus leaving an indeterminate period where no party holds a sufficient interest to be

personally liable for accruing maintenance fees, would be within the "fair contemplation"

of the Association prior to the bankruptcy proceedings.  *See In re Cleveland*, 349 B.R.

522, 531 (Bankr. E.D. Tenn. 2006) (finding pre-petition claim where "there was a

relationship, existing pre-petition, between the debtor and the creditor such that the

6

creditor could fairly contemplate the possibility of a claim against the debtor's bankruptcy estate at the time that the bankruptcy petition was filed").

Perhaps because the three general approaches fail to elucidate the matter, courts have applied a different set of approaches to resolve the question of whether post-petition condominium assessments are pre-petition claims.

The first line of cases treats post-petition assessments as incidents of ownership deriving from a covenant running with the land and thus as nondischargeable post-petition debt, exemplified by *In re Rosenfeld*, 23 F.3d 833 (4th Cir. 1994). These cases hold that a condominium association has a property interest in extracting reimbursement of maintenance costs from the burdened estate, which creates a new personal liability at the time of each assessment. *E.g.*, *In re Foster*, 435 B.R. 650 (9th Cir. BAP 2010); *In re Hall*, ___ B.R. ___, Case No. 07-67762, 2011 WL 2938233 (Bankr. N.D. Ga. Feb. 18, 2011); *In re Guillebeaux*, 361 B.R. 87 (Bankr. M.D.N.C. 2007); *In re Rivera*, 256 B.R. 828 (Bankr. M.D. Fla. 2000) (collecting cases); *In re Lozada*, 214 B.R. 558 (Bankr. E.D. Va. 1997); In re Gonzalo, 169 B.R. 13 (Bankr. E.D.N.Y. 1994); *In re Beeter*, 173 B.R. 108 (Bankr. W.D. Tex. 1994); *In re Raymond*, 129 B.R. 354 (Bankr. S.D.N.Y. 1991).

Courts following this approach express particular concern for the notion that discharging a debtor's personal liability for post-petition assessments would work an impermissible deprivation of property interests through bankruptcy law. *See United States v. Security Indus. Bank*, 459 U.S. 70, 75 (1982) (bankruptcy law impairment of property rights subject to Takings Clause of the Fifth Amendment); *In re Nichols*, 440 F.3d 850, 854 (6th Cir. 2006) (bankruptcy laws generally authorized to impair

7

contractual obligations, but not property rights).  Such courts appear to have implicitly

analogized the covenant for assessed fees to a profit, whereby an association has the

right to mine the current landowner's purse.  The obligation to pay assessments is not a

personal liability extending into the future, but rather an obligation of owning an estate in

land.  In this way, it may be taken as akin to the lateral support rights of adjacent

property or to keep the property free of hazards to neighboring land.  These analogous

obligations may require continual upkeep by the owner, but they cannot reasonably be

said to represent ongoing personal obligations of any particular owner.  Unlike a

contractual obligation to maintain certain property, the owner immediately divests

himself of any future liability by transferring ownership of the property.  The obligations

affix to and inhere in the property itself.  They attach to the current owner merely upon

realization of liability under these obligations.  Under this approach, it is not the pre-

petition ownership or covenanting that creates the post-petition debt; it is the post-

petition act of retaining ownership of the property that carries with it the post-petition

obligation to pay assessments.

The second line of cases takes precisely the opposite approach, treating the

post-petition assessments as contractual obligations arising from the pre-petition

acquisition of the condominium property, following *In re Rosteck*, 899 F.2d 694 (7th Cir.

1990).  As such, they are viewed as contingent personal liabilities extending into the

future from a discrete point in the pre-petition past, which must be found to be pre-

petition claims.  *E.g.*, *In re Hawk*, 314 B.R. 312 (Bankr. D. N.J. 2004); *In re Stone*, 243

B.R. 40 (Bankr. W.D. Wisc. 1999); *In re Affeldt*, 164 B.R. 628 (Bankr. D. Minn. 1994); *In

re Lamb*, 171 B.R. 52 (Bankr. N.D. Ohio 1994); *In re Garcia*, 168 B.R. 320 (Bankr. E.D.

8

Mich. 1993); *In re Wasp*, 137 B.R. 71 (Bankr. M.D. Fla. 1992); *In re Cohen*, 122 B.R.

755 (Bankr. S.D. Cal. 1991); *In re Elias*, 98 B.R. 332 (N.D. Ill. 1989); *see also In re Eno*,

269 B.R. 319 (Bankr. M.D. Pa. 2001) (finding assessments constitute a pre-petition

claim even though obligation is a covenant running with the land); *In re Mattera*, 203

B.R. 565 (Bankr. D. N.J. 1997) (same).

The courts following this approach emphasize the broad definition of "claim"

under the Bankruptcy Code and view future assessments as "contingent, unmatured,

unliquidated, unfixed right to payment." *In re Mattera*, 203 B.R. at 571. At the time of

acquisition, a property holder's liability for future assessments is seen as contingent

upon "whether the [debtor] continued to own the condominium and whether [the

association] actually levied assessments." *In re Rosteck*, 899 F.2d at 696-97. In the

instant case, the bankruptcy court further relied upon the exclusion of post-petition

assessments from discharge under other sections of the Bankruptcy Code pursuant to §

523(a)(16)[1] in finding that Congress has by implication determined that post-petition

---

[1] In relevant part, Bankruptcy Code § 523 states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

(16) for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case.

11 U.S.C. § 523(a)(16).

9

assessments constitute pre-petition claims otherwise dischargeable in bankruptcy.  *In re Hawk*, 314 B.R. at 316-17 ("By defining the parameters of when post-petition fees and assessments can and cannot discharged, Congress was implicitly stating that these future assessments are claims.").

The third line of cases has been described as comprising "results-oriented decisions driven by equity."  *In re Beeter*, 173 B.R. at 112.  These cases hold that post-petition assessments are dischargeable as pre-petition debts only to the extent that a debtor has actually surrendered the property and, therefore, obtains no benefit from the property.  *E.g.*, *In re Pratola*, 152 B.R. 874 (Bankr. D.N.J. 1993); *In re Miller*, 125 B.R. 441 (Bankr. W.D. Pa. 1991); *In re Ryan*, 100 B.R. 411 (Bankr. N.D. Ill. 1989); *In re Montoya*, 95 B.R. 511 (Bankr. S.D. Ohio 1988).  Although the results of these cases may seem equitable, they lacked a firm foundation in the Bankruptcy Code until the enactment of § 523(a)(16).  *See In re Whitten*, 192 B.R. 10, 13 (Bankr. D. Mass. 1996); *In re Beeter*, 173 B.R. at 113.  The Bankruptcy Code now adopts the approach of this line of cases for some types of bankruptcy proceedings inasmuch as a debtor cannot obtain a discharge of post-petition condominium association assessments as long as "the debtor or the trustee has a legal, equitable, or possessory ownership interest" in the subject property.  11 U.S.C. § 523(a)(16) (exemption for discharges under Chapter 7, Chapter 11, Chapter 12, and Chapter 13 hardship discharge pursuant to § 1328(b)).  Courts have narrowly interpreted this exemption under § 523, however, deciding cases that fall outside the statutory language according to one of the three lines of cases developed before enactment of the exemption.  *See In re Danastorg*, 382 B.R. 585, 588 (Bankr. D. Mass. 2008); *In re Rivera*, 256 B.R. at 832; *In re Stone*, 243 B.R. at 41-42; *In*

10

re *Lozada*, 214 B.R. at 561; *aff'd* 176 F.3d 475 (4th Cir. 1999) (Table); *but see In re Hawk*, 314 B.R. at 316-17.  Recently, the *Foster* court specifically addressed at length the inapplicability of § 523(a)(16) to the discharge of post-petition assessments under § 1328(a).  *In re Foster*, 435 B.R. at 658-659.  This court agrees with the *Foster* court that § 523(a)(16) and § 1328(a) are mutually inapplicable based upon the plain language of the Bankruptcy Code.  When evaluating the dischargeability of debts under § 1328(a), the conditions of discharge set forth in § 523(a)(16) simply do not apply.

Despite the seeming irreconcilability of these three approaches to post-petition condominium association assessments, some courts have suggested that each may have its proper place.  In remanding the appeal in *In re Affeldt*, 60 F.3d 1292 (8th Cir. 1995), the Eight Circuit declined to categorically determine whether assessments are contractual or property interests.  Instead, the *Affeldt* court held that the proper approach depends upon whether the assessments arise under a contract between the condominium association and the property owner or whether the assessments arise under a covenant running with the land.  *Id.* at 1296.  This can be determined only by a thorough analysis of both the documents establishing the obligation to pay assessments and the law of the state in which the property is located.  *Id.*; *see also In re Beeter*, 173 B.R. at 121 n.12; *In re Raymond*, 129 B.R. at 361.  Although the Bankruptcy Code determines the extent of claims and discharge of debts, the determination of property rights and enforceable obligations is left to state law.  *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000); *Butner v. United States*, 440 U.S. 48, 55 (1979). "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to

11

be determined by reference to state law." *In re Dow Corning Corp.*, 456 F.3d 668, 684 (6th Cir. 2006) (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946)).  Therefore, the court begins with an examination of Michigan law and the condominium deed.

### B.  Assessments as Property Rights

The Association has a right to payment of assessments for the maintenance and upkeep of the condominium property as a property interest arising from a deed covenant running with the land.  Michigan's Condominium Act, Mich. Comp. Laws § 559.101, *et seq.*, establishes the statutory framework for condominium property rights within the State.  Two sections are particularly applicable.  Section 46 permits the imposition of "reasonable restrictions or covenants running with the land upon a condominium unit."  Mich. Comp. Laws § 559.146.  Additionally, § 69 establishes the default rule that, absent a contrary provision in the condominium documents, common expenses will be divided proportionally among condominiums and that an owner "shall not be exempt from contributing . . . by nonuse or waiver of the use of any of the common elements or by abandonment of his or her condominium unit."  Mich. Comp. Laws § 559.169(3), (4).  Together with the master deed and bylaws, these sections furnish the conditions making Debtor's obligation to pay assessments a covenant running with the land.  Maple Forest's master deed and bylaws were written pursuant to the Condominium Act, expressly stating that the obligations and restrictions are covenants running with the land.  (R. 6, Ex. A at 1, 5-6.)  The bylaws authorize the Association to levy assessments proportionally among the unit owners and to enforce

12

collection.  (R. 6, Ex. B at 1-2, 4.)  Under Michigan law, Debtor was obligated to pay the monthly assessments so long as he was a unit owner.

"The test as to whether a covenant runs with the land, or is merely personal, is whether the covenant concerns the thing granted and occupation or enjoyment of it . . . ."  *Mueller v. Bankers' Trust Co. of Muskegon*, 247 N.W. 103, 104 (Mich. 1933) (quoting *Keogh v. Peck*, 417 N.E. 266, 269 (Ill. 1925)).  A covenant will be found to run with land (1) when the parties intended the covenant to run with land, (2) when the covenant will "affect or concern the land with which it runs," and (3) when privity exists between the party claiming its benefit and the party burdened by it.  *Greenspan v. Rehberg*, 224 N.W.2d 67, 73 (Mich. Ct. App. 1974) (citation omitted); 7 Mich. Civ. Jur. Deeds of Conveyance § 57.  All three elements are present in this case.

First, the parties' intent that the covenant should run with the land is reflected in the unambiguous language of the deed, which states that the property is subject to "the covenants, conditions, restrictions, uses, limitations and affirmative obligations set forth in this Master Deed and Exhibits A and B hereto, all of which shall be deemed to run with the land."  (R. 6, Ex. A at 1.)  Exhibit A to the master deed comprises the bylaws of the Association.  The obligation to pay assessments by the Association is incorporated in article II of the bylaws.  (R. 6, Ex. B.)  Although the assessments are initially to be made on an annual basis and paid in monthly installments, the bylaws expressly permit the Association "to increase the general assessment or to levy such additional assessment or assessments as it shall deem to be necessary."  (R. 6, Ex. B at 2.)  By the terms of the master deed and the bylaws, the obligation to pay assessments determined on a monthly basis is contemplated to be a covenant running with the land.

13

No party has suggested, nor would it be reasonable to conclude, that the covenanting parties intended a personal covenant for the ongoing maintenance of the condominium property.  It must be recognized that the need for maintenance expenditures relating to common elements under the control of the Association was anticipated to continue so long as the condominium development exists.  The benefits of such maintenance necessitate their expense, which is provided for through assessments.  These assessments, in turn, are anticipated to come from the condominium unit owners who benefit from the maintenance only while they remain owners.  As such, the documents evince a clear intent of the covenanting parties that the covenants should run with the land, so the first element of the test is satisfied.

Second, the covenant touches and concerns the land, rather than the individual parties.  The Michigan Supreme Court has provided a standard for determining whether a covenant concerns the land.

> If a covenant concerns the land and the enjoyment of it, its benefit or obligation passes with the ownership; but to have that effect the covenant must respect the thing granted or demised and the act to be done or permitted must concern the land or the estate conveyed.  In order that a covenant may run with the land, its performance or nonperformance must affect the nature, quality, or value of the property demised, independent of collateral circumstances, or must affect the mode of enjoyment.

*Mueller*, 247 N.W. at 104 (quoting *Keogh*, 417 N.E. at 269).  It has long been established that covenants to keep land in repair "indisputably" concern the property.  *Plaza Inv. Co. v. Abel*, 153 N.W.2d 379, 381 (Mich. Ct. App. 1967) (citing *Spencer's Case*, (1584) 77 Eng. Rep. 72 (Q.B.)).  Although the law is less settled with respect to covenants to pay for the upkeep and maintenance of land, it follows that condominium association assessments affect and concern the property.  Michigan recognizes that

14

obligations to pay necessary costs for improvements to common elements of subdivided property may be covenants running with the land where such obligations are included as covenants in recorded restrictions on the property.  *Burton-Jones Dev., Inc. v. Flake*, 117 N.W.2d 110, 114 (Mich. 1962).  In *Burton-Jones*, the court implicitly found that such covenants concern the land by upholding the trial court's decision that the covenants to pay proportional shares of the expense of improvements did run with the land.  *Id.* Common elements and the ability to pay for their upkeep impact the property's value, irrespective of the owner at any given time.  Maintenance is required to keep land in a suitable condition for certain uses, whether habitation or mere passage.  Such maintenance also affects the value of other condominium properties within the same development.  By establishing the common provision of maintenance and assessments for such costs, every estate in the common plan is reciprocally burdened and benefitted. Therefore, the second element is satisfied.

Third, privity exists between the Association and Debtor, as the covenant was incorporated into the original conveyance of the unit to Debtor.  Privity is not readily apparent, because the Association never owned any land that would appear on Debtor's chain of title, nor is it a successor to the interest of the developer.  However, this court finds that sufficient privity exists between the two parties.  In *Burton-Jones*, privity was clearly present as the developer—the original grantor—sought enforcement of the covenants.  The instant case is not altogether different, as the developer simply shifted the financial liability for maintenance costs to the Association, which fills the same role.  The Association is one step removed from traditional privity of estate, but, as a matter of equity, that formal distinction should not bar enforcement of the covenant.

15

*See Neponsit Prop. Owners' Ass'n v. Emigrant Indus. Sav. Bank*, 15 N.E.2d 793 (N.Y. 1938).   In *Neponsit*, the New York Court of Appeals found privity of estate between a homeowner's association and the defendant bank's predecessor in title, though the association itself did not own property.

> Only blind adherence to an ancient formula devised to meet entirely different conditions could constrain the court to hold that a corporation formed as a medium for the enjoyment of common rights of property owners owns no property which would benefit by enforcement of common rights and has no cause of action in equity to enforce the covenant upon which such common rights depend. . . .   In substance if not in form the covenant is a restrictive covenant which touches and concerns the defendant's land, and in substance, if not in form, there is privity of estate between the plaintiff and the defendant.

*Id.* at 798.   Though privity was not disputed in *Burton-Jones*, the court gave favorable treatment to this non-formalistic approach as it related to the "touch and concern" requirement.   *See* 117 N.W.2d at 115 (quoting with approval *Neponsit*, 15 N.E.2d at 797).   Therefore, the obligation to pay condominium fee assessments arises from a covenant running with the land.

The analysis is not concluded with this determination that the debt arises out of property law rather than contract.   As an incident of ownership, the obligation to pay the assessed fees depends upon whether Debtor remained the owner of the property at all relevant times.   It is undisputed that Debtor listed an intent to surrender the property in his Chapter 13 plan, but it is equally undisputed that the mortgagee has not taken title to the collateral.   In ordinary circumstances, a creditor with a senior security interest in real property will act to foreclose upon the property or accept a deed in lieu of foreclosure soon after the lifting of the bankruptcy stay.   Recent turmoil in the real estate markets, however, has disrupted the ordinary course of such proceedings.   With mortgage debt

frequently exceeding the value of the property and limited demand in the market, mortgagees have had less incentive to move swiftly because they can no longer expect to obtain full satisfaction on their loans.  The confluence of economic forces has flooded the market and jammed the usual flow of the foreclosure process, with upstream effects on bankruptcy proceedings.  As more mortgages go "under water," the courts are increasingly called upon to chart the extent of the legal effect of surrender and transfer of property.  *See In re Burgueno*, Case No. 09-10375, ___ B.R. ___, 2011 WL 2084190, *2 (Bankr. D. Ariz. May 26, 2011).

Under Michigan law, ownership of real property must be transferred in accordance with the requirements of the statute of frauds.  In relevant part, the statute of frauds provides that "[n]o estate or interest in lands . . . shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same."  Mich. Comp. Laws § 566.106.  A conveyance by written instrument must be "certain and definite" as to "the parties, property, consideration and time of performance."  *In re Skotzke*, 548 N.W.2d 695, 696 (Mich. Ct. App. 1996).  As no written instrument even approaching such a description is indicated, the court must consider whether the property has been conveyed by operation of law. In the context of land contracts, Michigan courts have held that surrender by parol does not satisfy the statute of frauds requirements, but that surrender by parol with subsequent leasing of the land constitutes a transfer of rights by operation of law.  *In re Miller*, 90 B.R. 865, 868-69 (Bankr. W.D. Mich. 1988) (citations omitted).  Because there

17

is no basis in Michigan law to effect a transfer, the only remaining question is whether bankruptcy law operates to transfer Debtor's interest in the property.

Under the Bankruptcy Code, Debtor's "surrender" merely establishes that Debtor will not oppose the transfer of collateral. *In re Cormier*, 434 B.R. 222, 231 (Bankr. D. Mass. 2010); *In re White*, 282 B.R. 418, 423 (Bankr. N.D. Ohio 2002); *In re Horton*, 170 B.R. 1019, 1023-24 (Bankr. W.D. Mo. 1994); *In re Service*, 155 B.R. 512, 514 (Bankr. E.D. Mo. 1993); *In re Robertson*, 72 B.R. 2, 4 (Bankr. D. Colo. 1985). In § 1325(a)(5)(C) of the Bankruptcy Code, as in § 521(a)(2), "the most sensible connotation of 'surrender' in the present context is that the debtor agreed to make the collateral available to the secured creditor." *In re Ames*, 447 B.R. 680, 683 (Bankr. D. Mass. 2011) (quoting *In re Pratt*, 462 F.3d 14, 18 (1st Cir. 2006)). Absent some further action—such as foreclosure, deed in lieu of foreclosure, or short sale of the property—surrender does not divest a debtor of ownership and its obligations. *In re Burgueno*, ___ B.R. ___, Case No. 09-bk-10375, 2011 WL 2084190, at *2 (Bankr. D. Ariz. May 26, 2011); *In re Ames*, 447 B.R. at 683; *In re Canning*, 442 B.R.165, 172 (Bankr. D. Me. 2011); *In re Horton*, 170 B.R. at 1023. Although Debtor may have agreed not to oppose the seizure of the collateral by secured creditors, he has not thereby transferred title to the creditors. Debtor remained the owner of the property and, therefore, remained obligated to pay periodic assessments by the Association arising from a covenant running with the land.

### C. Assessments as Post-petition Debts

Alternatively, regardless of whether the obligation to pay assessments is viewed as a contractual or property right, it arises post-petition where it lies wholly within the

18

power of the debtor to avoid the obligation *after* the petition date.  Viewed *ex ante*, Debtor's obligation to pay post-petition assessments would not arise until and unless Debtor retained title after the commencement of bankruptcy proceedings.  While the existence of a claim is determined by state law, federal law determines when a claim arises.  *In re Parks*, 281 B.R. 899, 902 (Bankr. E.D. Mich. 2002) (citing *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 532 (9th Cir. 1998)).

Several courts have found that condominium associations in such circumstances hold unmatured and contingent claims against debtors.  *E.g.*, *In re Rosteck*, 899 F.2d 694 (7th Cir. 1990); *In re Mattera*, 203 B.R. 565 (Bankr. D. N.J. 1997).  Although this court agrees that the claim depended upon "whether the [Debtor] continued to own the condominium and whether [the Association] actually levied assessments," *In re Rosteck*, 899 F.2d at 696-97, this is an incomplete description.  "It is generally agreed that a debt is contingent if it does not become an obligation until the occurrence of a future event, but it is noncontingent when all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy."  *In re Mazzeo*, 131 F.3d 295, 302 (2d Cir. 1997).  Contingent claims are potential claims where liability arises, if at all, "only upon the occurrence or happening of an extrinsic event which will trigger the liability." *In re Parks*, 281 B.R. 899, 901 (Bankr. E.D. Mich. 2002).  As such, the uncertain future event must occur with some probability beyond the control of the debtor to determine—it must be "extrinsic."  A supposed right to payment that can be avoided solely by discretionary action of the debtor is no right at all; it is merely illusory.  Where a right to payment after the bankruptcy filing remains solely within the power of the debtor to avoid, the right to payment does not arise from the pre-petition agreement.

19

*See Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 533 (9th Cir. 1998) (contractual fee shifting not contingent debt and not dischargeable where debtor voluntarily initiated suit in state court on pre-petition contract during pendency of bankruptcy); *In re Sure-Snap Corp.*, 983 F.2d 1015, 1018 (11th Cir. 1993) (fee shifting arising from debtor's post-petition appeal not discharged); *In re Cogar*, 210 B.R. 803, 810 (9th Cir. B.A.P. 1997) (no contingent claim where asserted contingency created by plan confirmation).  The right to payment arises instead when the debtor may no longer unilaterally act to avoid the obligation.

In this case, Debtor became liable for Association assessments on an ongoing basis, both before and after the petition date.  Each month's new assessment arose not out of some pre-existing obligation to continue paying for some period of time, but as a result of continued ownership of the property.  As a result, there was no pre-petition "right to payment," which is the sine qua non of a "claim" under the Bankruptcy Code. *See In re Hall*, ___ B.R. ___, Case No. 07-67762, 2011 WL 2938233, at *9-10 (Bankr. N.D. Ga. Feb. 18, 2011).  All that would have been necessary for Debtor to stop incurring such debts was for him to transfer title.  Divesting ownership cuts off all future liability.  In this way, the liability on condominium assessments stands in contrast to the liability on a mortgage or other secured loan.  *See Id.* at *9-10.  The former gives rise to an obligation only while the debtor retains ownership of the property, whereas the latter constitutes an ongoing personal obligation for repayment even where the collateral is divested or destroyed.  *See Johnson v. Home State Bank*, 501 U.S. 78, 82-83 (1991). Although Debtor could not ensure his continued ownership of the property, he could ensure his non-ownership of it.  The court need not consider whether this will always be

20

the case, as Debtor indicates that he took no action to divest himself of title and its attendant obligations.  Absent his continued ownership of the property, Debtor would have ceased to incur any further debts from assessments.  The pre-petition assessment liabilities are unquestionably dischargeable as "claims" arising prior to the petition date, however, the post-petition assessments arose solely because Debtor retained ownership after that time.  Each month of continued ownership brought with it a separate assessment, which Debtor could have avoided after the petition date.  The contingency upon which the bankruptcy court and other courts in the *Rosteck* line of cases relied is merely illusory; it remains within the power of a debtor to prevent the contingency that triggers liability, even after the petition date.  The debts cannot, therefore, be contingent claims under the Bankruptcy Code.  There existed prior to the petition date no "right to payment" of later assessments—whether contingent or definite, due or unmatured.  As such, the debts are properly attributed to Debtor's post-petition conduct, rather than a pre-petition agreement or covenant.

Debtor's argument that the post-petition assessments are pre-petition claims is analogous to the situation of a debtor who argues post-petition liability for injuries caused by leaving property in a dangerous condition arose pre-petition because the debtor acquired the property and deferred maintenance before initiating bankruptcy proceedings.  Such a debtor would be liable for damages arising from the dangerous condition of the property after filing for bankruptcy relief because such liability arises from the post-petition retention of ownership.  *In re Canning*, 442 B.R.165, 172 (Bankr. D. Me. 2011); *In re Clark*, 96 B.R. 569, 575 (Bankr. E.D. Pa. 1989).  The ongoing ability of a debtor to incur post-petition liabilities is not precluded by the Bankruptcy Code.

21

*See In re Horton*, 170 B.R. 1019, 1022 (Bankr. W.D. Mo. 1994); In re Clark, 96 B.R. at 575; *In re Hester*, 63 B.R. 607, 609 (Bankr. E.D. Tenn. 1986). In the instant case, the Association has a claim against Debtor that arose post-petition under property law.

The foregoing analysis depends upon Debtor's ability to divest himself of the property. The court presumes Debtor can transfer real property to avoid incurring liability, absent evidence to the contrary. It is not necessary that Debtor be able to sell the property at a price sufficient to extinguish his personal liability on the mortgages encumbering it. To the extent that the mortgage claims are undersecured, they will be bifurcated, with the amount in excess of the collateral value becoming a general unsecured claim. *See* 11 U.S.C. § 506(a)(1). The same result is reached by a short sale for less than the value of the secured creditors' claims. Absent unusual circumstances that have not been indicated here, therefore, it is within the power of Debtor to divest title of the property in some fashion.

Finally and relatedly, the court need not consider whether bankruptcy courts have the power to compel the secured creditor to accept surrender of the property, as Debtor failed to make any attempt to effect a surrender of the property to creditors. In the absence of any attempt by Debtor to effect transfer ownership of the property by tendering a deed in lieu of foreclosure or otherwise, there is no reason to assume such efforts would be wholly fruitless. Some courts have addressed the issue of the power of the court to require secured creditors to accept surrender of collateral in cases where, as here, the debtors had made no attempt to transfer ownership. *In re Cormier*, 434 B.R. 222, 233 (Bankr. D. Mass. 2010); *In re White*, 282 B.R. 418, 423 (N.D. Ohio 2002); *In re Horton*, 170 B.R. 1019, 1023 (W.D. Mo. 1994); *In re Service*, 155 B.R. 512, 514

22

(E.D. Mo. 1993).  It is worth noting that there is some authority to support the exercise of such power under appropriate conditions.  *In re Pratt*, 462 F.3d 14, 19-20 (1st Cir. 2006); *see also In re Canning*, 442 B.R. 165, 171 (Bankr. D. Me. 2011) (limiting *In re Pratt* to "worthless" property, which excludes real property in most instances); *In re Cormier*, 434 B.R. at 232-33 (declining to reach the issue but ruling consistent with *In re Pratt*).  Furthermore, the Fifth Amendment Takings Clause limitations discussed in *United States v. Security Industrial Bank*, 459 U.S. 70, 75 (1982), do not constrain the courts in situations where creditors hold nothing more than contingent property interests, which are simply made definite.  The creditor has precisely the same property rights before and after the surrender.  While a lien is in some ways like a contingent option, § 1328(a) discharges a debtor's personal liability on pre-petition debts.  The mortgagee no longer holds a personal obligation of the debtor but has recourse to the collateral, with an unsecured claim for any undersecured debt.  *See* 11 U.S.C. § 506(a)(1); *Johnson*, 501 U.S. at 82-83.  As the issue is not raised in this appeal, the court merely addresses this in further explanation of the underlying assumption that Debtor is capable of divesting ownership of the property.  Because of this, the assessments must be viewed as post-petition debts not discharged under § 1328(a) regardless of whether the Association's rights derive from a contract or a covenant running with the land.

## IV.  CHAPTER 13 TRUSTEE'S INVOLVEMENT

In addition to Debtor, the standing Chapter 13 trustee, David Wm. Ruskin ("Trustee"), filed a response brief in opposition to the Association's appeal.  On February 15, 2011, the Association moved to strike the Trustee's brief, arguing that the

23

Trustee lacks standing.  The Trustee responded on February 18, 2011.  Because the court will remand the case to the bankruptcy court for further proceedings in which the Trustee may have an interest, the court will address the motion to strike.

On November 24, 2010, the bankruptcy court issued an order, on stipulation of the parties, allowing the Trustee to intervene in this adversary proceeding.  (Trustee Resp. Ex. 2.)  The Trustee is empowered by statute to represent the interests of bankruptcy estate, which primarily inures to the benefit of the unsecured creditors.  11 U.S.C. § 323(a); *In re Liles*, 292 B.R. 138, 139 (Bankr. E.D. Tex. 2002).  As the Trustee notes, Debtor's continuing obligation to pay condominium assessments will reduce funds of the estate available to unsecured creditors.  The Trustee has a "direct and pecuniary interest" in the instant appeal as the representative of the estate.  *See In re LTV Steel Co., Inc.*, 560 F.3d 449, 452-53 (6th Cir. 2009).  As the representative of the estate, therefore, the Trustee has both a legally cognizable interest in the adversary proceeding and a duty to intervene as necessary for the benefit of the creditors.  *See In re Andrews*, 49 F.3d 1404, 1407-08 (9th Cir. 1995).  Accordingly, the court will deny the Association's motion to strike the Trustee's answer.

## V. CONCLUSION

IT IS ORDERED that bankruptcy court's order is REVERSED IN PART in that assessments of condominium fees issued by Appellant Maple Forest Condominium Association after Debtor's Chapter 13 petition are post-petition claims.  It is AFFIRMED IN PART as to all other aspects.

IT IS FURTHER ORDERED that Appellant's motion to strike [Dkt. # 13] is DENIED.

24

Finally, IT IS ORDERED that the case is REMANDED for further proceedings consistent with this opinion.

                         s/Robert H. Cleland
                         ROBERT H. CLELAND
                         UNITED STATES DISTRICT JUDGE

Dated:  August 22, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 22, 2011, by electronic and/or ordinary mail.

                         s/Lisa Wagner
                         Case Manager and Deputy Clerk
                         (313) 234-5522